### In re GRAHAM.

#### PIERIK v. HAVENS & GEDDES CO. et al.

#### (District Court, S. D. Illinois. June 25, 1901.)

BANKRUPTCY—VOIDABLE PREFERENCE.

Evidence considered, and *held* to establish the fact that the agent of a creditor, who took an assignment of an insurance policy under which a loss had occurred, to secure his principal's debt, within four months prior to the debtor's bankruptcy, and while she was insolvent, had reasonable cause to believe that it was intended thereby to give a preference, so as to render the assignment voidable, under Bankr. Act 1898, § 60b.

In Bankruptcy. On exceptions to report of special commissioner.

Alonzo Hoff and Brown, Wheeler, Brown & Hay, for complainant. James M. Graham, for defendants.

HUMPHREY, District Judge. Briefly stated, the facts are that the bankrupt bought a stock of goods at Pawnee, Ill., in June, 1898, from Ament & Dixon; the first-named partner being the same Ament who then was, and still is, the agent of the defendants Hav-

ens & Geddes Company. The bankrupt suffered a loss by fire February 7, 1900. On February 10, 1900, three days after the fire, Ament, on behalf of the defendants, procured from the bankrupt an assignment of a certain fire insurance policy for $2,000 as security for a debt of about $900 due the defendants Havens & Geddes Company. Flora J. Graham was adjudged a bankrupt April 16, 1900. The complainant Pierik was appointed receiver April 27, and the bill herein was filed May 25, 1900, praying that the assignment of the insurance policy be decreed to be null and void, and the insurance company required to pay the amount due thereunder to the receiver. The cause was referred to W. E. Shutt, special commissioner, to take proof and report conclusions; and the commissioner reported May 13, 1901, recommending that the prayer of the bill be refused. The matter now comes before the court upon the exceptions of Herman Pierik, receiver, to the report of the special commissioner.

Under section 60a of the bankrupt act, the assignment of the insurance policy gave a preference to the defendants. As to this there can be no dispute. The bill in this case prays for relief under section 60b of the act, and is based upon the assumption that the defendants Havens & Geddes Company had reason to believe that the assignment so given was intended to work a preference. The whole question here turns upon the application of this section of the statute to the facts as disclosed by the evidence. It appears that Ament knew the bankrupt intimately for about 10 years. When the bankrupt bought the stock of goods from Ament and his partner, Dixon, in June, 1898, the bankrupt owned nothing in her own right, except a dower interest in a small homestead, and a life estate in a few other pieces of real estate, of very small value. The entire value of the real estate, as shown by the statement of the bankrupt, in June, 1898, was only $1,600, and both the bankrupt and her husband testify that Ament at that time knew and was told what the interest of the bankrupt was. The bankrupt testifies that she then and there told Ament that she was paying for the stock with notes she held belonging to her children. "I said to him, 'You know that this money is the children's money, that I am buying the goods with?' He said, 'Yes,' he knew all about it." (Page 3 of Flora J. Graham's testimony.) "I said to Mr. Ament, 'You know I have nothing only the home,—my dower in the home place. The rest was the children's, you know.'" (Page 5, Flora J. Graham's testimony.) It appears also that the bankrupt signed two property statements prepared by the agent, Ament; that these statements both include the several pieces of real estate, the fee of which belonged to the bankrupt's children. One of these statements, made June 27, 1898, fixes the value of real estate in Keyesport, Ill., at $1,200, and the other, made January 4, 1900, fixes the value of the same real estate in Keyesport at $1,800; and the bankrupt testifies that at the time of making both statements she told Ament, in substance, that she did not own the property, but only had a dower in the homestead, but he insisted that she should sign it as he made it out. Without stating in words the various items of evidence tending to bring to the defendants, through their agent, Ament, the knowledge of the insolvency of the bankrupt, it

is sufficient to say that Ament knew in 1898 that the bankrupt had practically nothing of her own; that he had kept himself advised as to her business since; that he knew she was behind in her payments; that his house had held up a shipment in the fall of 1899 on account of failure to pay; that Dixon, his former partner, had a claim against the bankrupt which he was unable to collect; that other houses had discontinued business with her because they did not consider her good. All of these facts were known to Ament prior to and at the time of the taking of the assignment in question, as the evidence clearly shows. Against this is the testimony of Ament himself that he was innocent of any intention to gain a preference for Havens & Geddes Company, and ignorant of the insolvency of the bankrupt; that he did not know she had paid for the stock with her children's money, and did not know that the real estate in question belonged to the children; that he supposed it belonged to the bankrupt. The weight of the evidence on these questions is against the witness Ament. I am of opinion that the assignment of the fire policy in question was a preference given to Havens & Geddes Company by the bankrupt, Flora J. Graham, within four months before the filing of the petition in bankruptcy, at a time when she was insolvent, and that the defendants, through their agent, Ament, had reasonable cause to believe that such assignment was intended to be a preference for the benefit of the creditors, Havens & Geddes Company. The exceptions are sustained. The prayer of the bill will be granted, and an order entered accordingly.